UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JO ANN SOULÉ, | Case No. 2:18-cv-02239-GMN-EJY |
| Plaintiff, | |
| v. | **ORDER** |
| P.F. CHANG'S CHINA BISTRO, INC., | |
| Defendant. | |

Presently before the Court is Plaintiff Jo Ann Soulé's Motion to Strike Defendant's Answer or for an Adjudication as to Liability or, in the Alternative, for Adverse Presumption or Inference due to Defendant's Spoliation of Evidence Relating to the Subject Action. ECF No. 41. The Court has reviewed Plaintiff's Motion, Defendant's Response (ECF No. 43), and Plaintiff's Reply (ECF No. 44). The Court finds as follows.

**I.  BACKGROUND**

The underlying action arises from Plaintiff's fall at Defendant's Summerlin location on December 14, 2016, after which Plaintiff was transported by ambulance to a nearby hospital where she underwent immediate surgery. Prior to being transported, Defendant's senior manager on duty that day, Darnella Lupiba ("Lupiba"), spoke with Plaintiff, asked her if she was alright, and then instructed a restaurant employee to call 911 in accordance with the training Lupiba had received. ECF No. 41-2, Interrogatory No. 10; ECF No. 44-1 (Darnella Lupiba's Deposition Transcript) at 40-41. Lupiba did not take a video recording, get a handwritten statement or take pictures of the incident as she was not trained to do so. ECF No. 44-1 at 41–42. Nonetheless, there is no dispute that Defendant's restaurant had surveillance cameras (approximately seven according to Lupiba) that retain recordings for seven days. *Id*. at 45–46. One of those cameras captured footage of the area where Plaintiff fell. ECF No. 41, Ex. 1. Unfortunately, managers were not trained to automatically retain video surveillance. ECF No. 44-1 at 42. Lupiba explained that, after an accident, the normal procedure is to call Defendant's insurer who will ask if there is any video footage of the event. If

the answer is "yes," the insurance adjuster will then ask for the footage be sent to him/her. *Id.* However, even when asked by Defendant's insurer for video footage, Lupiba explained she did not send the original. Instead, she was trained to take a cell phone video of the original video and send the copy to the adjuster. *Id*. at 47. There was no testimony regarding whether managers were trained to keep the original video captured by Defendant's surveillance system.

In this case, Lupiba (i) completed a handwritten incident report regarding Plaintiff's accident about five minutes after Plaintiff was removed from Defendant's premises by ambulance, (ii) spoke to an insurance adjuster, and (iii) placed her report into a binder. *Id*. at 73–74. Lupiba remembers giving the insurer the "name, address, phone number, date of birth[, . . .] the time and date of the incident[,] and a description of the incident" to the insurance adjuster, but there was no testimony regarding whether the insurer requested she send him/her the captured video. *Id*. at 74. Lupiba testified that she received a report number from the insurance company regarding Plaintiff's fall and she was "not aware of any documentation for . . . [the accident] . . . other than what [she] wrote down." *Id*. at 74 and 81.

In sum, what is undisputed is that despite Plaintiff being taken by ambulance from Defendant's restaurant, preparing an incident report, and calling an insurer to report the event, no original surveillance footage was preserved by Defendant. ECF No. 17 at 2. Rather, as explained by Lupiba, Christopher Hodges, Defendant's operating partner, made a seven second long cell phone recording of video surveillance footage as it played on a computer screen the day of or the day after Plaintiff's fall. ECF No. 44-1 at 48, 76, and 77. The seven second recording includes, at most, three or four seconds of footage of Plaintiff walking, and then one or two seconds showing the fall.[1]

In addition to failing to preserve anything more than a seven second copy of surveillance video, Defendant also did not produce a copy of Lupiba's incident report regarding Plaintiff's accident until September 19, 2019, the day before the discovery period closed. ECF No. 43-1 at 3. This is true despite the fact that Plaintiff's Requests for Production ("RFPs") Nos. 3 and 4 requesting such documents were and propounded on January 15, 2019. ECF No. 41-6. In its very belated original response to these document requests, provided on May 15, 2019, Defendant stated it was

---

[1] Defendant produced this surveillance video footage on January 2, 2019. ECF No. 41, Ex. 1.

not in possession of and did not prepare *any* documents in response to Plaintiff's fall. ECF 41-3 (Responses to RFPs 3 and 4) at 3. However, when Lupiba testified at deposition on September 18, 2019, eight months after Plaintiff's first propounded these RFPs, Lupiba was clear that she had completed an incident report and placed that report in a binder in the office. ECF No 44-1 at 55. Lupiba also stated the document may have been faxed to the corporate offices or the insurer. *Id*.

Immediately following this September testimony, Defendant maintained it "was unaware of any handwritten notes relevant to this matter until Lupiba testified," but Defendant had no difficulty producing the report the very next day, one day before Plaintiff filed the instant Motion to Strike. ECF No. 43 at 2, and ECF No. 43-1. Moreover, Defendant's statement that it was "unaware" of this handwritten report was made despite Hector Sanchez's (sometimes "Sanchez") testimony at deposition a month earlier that completing an incident report is standard policy any time any person has an accident in the restaurant. ECF No. 41:10 at 37–38.[2] Lupiba's testimony further confirmed what Defendant should have known when discovery commenced in this matter; that is, (i) that in 2016, the Summerlin location "required . . . a handwritten incident report to be filled out by a manager any time there was a guest injury"; (ii) "there [is] a specific form that was in place at the restaurant that the manager would have to fill out" following a guest injury; (iii) a manager has to "print and sign their name" on the incident report; and, (iv) this is "mandatory" any time "a guest or patron was injured on the property." ECF No. 44-1 at 52–55.

Overall, what is undeniable is that Defendant failed to timely respond to document requests, propounded on January 15, 2019, until months after responses were due despite some agreed upon extensions and receiving emails from opposing counsel requesting the status of the outstanding responses. ECF No. 14 at 3-5. In fact, it was not until after Plaintiff filed a Motion to Compel, on May 15, 2019, that Defendant served responses to documents requests only. ECF Nos. 14 and 18-1. With respect to outstanding interrogatories, Defendant did not respond until June 3, 2019. ECF No. 41-2.

---

[2] Mr. Sanchez was Defendant's Executive Chef at the time of Plaintiff's accident.

3

Upon hearing Plaintiff's Motion to Compel on June 7, 2019, Judge Foley (Ret.) unequivocally overruled Defendant's objections to Plaintiff's discovery responses and found them waived. ECF No. 19. On August 26, 2019, the Court, again, clearly stated "that all objections to the request for production and objections to interrogatories were overruled and waived as good cause was not shown why the responses were not timely served or why objections should be allowed." ECF No. 33 at 1.

Irrespective of these Orders, it took Defendant until September 19, 2019 to provide a document clearly responsive to Plaintiff's RFPs. And, with respect to Plaintiff's Interrogatories, to this day Plaintiff has not received responses to Interrogatories Nos. 12 or 13. Defendant continues to stand by its "notice evidence" objection overruled by Judge Foley's June 7 order and confirmed by the Court's August 26, 2019. ECF Nos. 19 and 33. In fact, Defendant argues in its Response to Plaintiff's instant Motion to Strike that two judges in this District Court have concluded that certain types of notice evidence are inadmissible to prove constructive notice of a hazardous condition to a Defendant. ECF No. 43 at 3-4. This may be true, but Defendant fundamentally misunderstands the difference between discovery and admissibility for purposes of proving a fact at trial.

Finally, Defendant also grossly mishandled its response to Plaintiff's Interrogatory No. 6, which requested the contact information for parties responsible for maintenance of the area where Plaintiff fell during the 24-hour period prior to the accident. ECF No. 41-2 (Interrogatory No. 6). In response, Defendant identified that it "contracted with a company called 'Steam X' to clean and maintain the area nightly, after business hours," and promised to supplement the response with an address as it became available. *Id*. at 4. Thereafter, on June 19, 2019, Plaintiff's counsel emailed defense counsel in an effort to obtain Steam X's contact information, "given that the entity did not exist on the Nevada Secretary of State website and no contact information was provided in the Interrogatory Response." ECF No. 41 at 7. Defense counsel responded approximately twenty minutes later promising she would "look into the Steam X issue" and provide updated contact information as soon as possible "if the company has it." ECF No. 41-9 at 3. Plaintiff followed up on July 1, July 18, and August 26, 2019, but received no response from Defendant. *Id*. at 2–5. Then, on August 27, 2019, Hector Sanchez testified at deposition and easily provided contact information

for Steam X. ECF No. 41-10 at 56–57. Nevertheless, because the number provided by Mr. Sanchez was not Steam X's business number, Defense counsel stated that she would "see if there's a more appropriate [number]." *Id*. at 65. Defense counsel never followed up on her promise.

## II. DISCUSSION

Plaintiff claims Defendant "spoliated" evidence by failing to preserve surveillance footage of the area where Plaintiff fell "before, during, and after the subject incident," failing to supplement its interrogatory responses, and belatedly producing Lupiba's incident report and Steam X's contact information. ECF No. 41 at 3. These arguments are considered below.

    a.    <u>The Legal Standard for Spoliation</u>.

Spoliation is a serious allegation that the Court must carefully analyze. Spoliation is defined as:

> the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. . . . A party must preserve evidence it knows or should know is relevant to a claim or defense by any party, or that may lead to the discovery of relevant evidence. . . . The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation.

*Gonzalez v. Las Vegas Metropolitan Police Dept.*, No. 2:09-cv-00381-JCM-PAL, 2012 WL 1118949, *5 (D. Nev. Apr. 2, 2012) (internal citations omitted). "To be actionable, the spoliation of evidence must damage the right of a party to bring an action." *Ingham v. U.S.*, 167 F.3d 1240, 1246 (9th Cir. 1999) (internal citation omitted). "[T]he party alleging spoliation has the burden to prove by a preponderance of the evidence that the accused party actually destroyed, altered, or failed to preserve relevant evidence." *U.S. E.E.O.C. v. Wedco, Inc.*, No. 3:12-cv-00523-RCJ-VPC, 2014 WL 4635678, *2 (D. Nev. Sept. 15, 2014), *citing LaJocies v. City of N. Las Vegas*, No. 2:08-cv-00606-GMN-GWF, 2011 WL 1630331, *1 (D. Nev. Apr. 28, 2011).

A federal court is empowered to sanction a spoliating party under its inherent authority or Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 37.[3] *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958

---

[3] "Federal law governs the imposition of spoliation sanctions because that constitutes an evidentiary matter. . . . However, state law is relevant to a determination of whether spoliation sanctions are warranted because it provides the standard for recovery in slip and fall actions, which includes defining constructive knowledge of the hazard." *Demena v. Smith's Food & Drug Centers, Inc.*, No. 2:12-cv-00626-MMD-CWH, 2012 WL 3962381 n.2 (D. Nev. Sept. 10, 2012) (internal citations omitted).

5

(9th Cir. 2006). The Court may exercise its inherent authority to impose sanctions "based on a party's failure to preserve relevant evidence . . . if [the party] had some notice that the evidence was potentially relevant to pending or reasonably foreseeable litigation." *Anderson v. Wal-Mart Stores, Inc.*, No. 2:10-cv-02235-GMN-GWF, 2011 WL 4621286, *3 (D. Nev. Oct. 3, 2011) (internal citations omitted). "This is an objective standard that asks not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Spencer v. Lunada Bay Boys*, No. CV 16-02129-SJO (RAOx), 2017 WL 10518023, *5 (C.D. Cal. Dec. 13, 2017) (internal citation omitted). "[I]f relevant evidence has been shown to exist, and if the possessor of that evidence was on notice that the evidence was potentially relevant to litigation which was reasonably foreseeable, and if that party failed to take reasonable steps to preserve it, sanctions may be imposed upon that party." *Fernandez v. Centric*, No. 3:12-cv-00401-LRH-WGC, 2014 WL 2042148, *4 (D. Nev. May 16, 2014). In contrast, "a party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business." *Gonzalez*, 2012 WL 1118949 at *6 (internal citations omitted).

When considering the award of spoliation sanctions, "the court should choose the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *LaJocies*, 2011 WL 1630331 at *4 (internal citation omitted). The most severe sanction is to strike a defendant's answer and enter a default. Such a dispositive sanction "should not be imposed unless there is clear and convincing evidence of both bad-faith spoliation and prejudice to the opposing party." *Micron Technology, Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1328–29 (9th Cir. 2011) (internal citation omitted). The next available sanction is to order a rebuttable presumption against the offending party that the evidence, if it had not been despoiled, would have been detrimental to the despoiler. "To warrant a rebuttable presumption, [the offending party] must have consciously disregarded its obligation to preserve" lost evidence. *McCabe v. Wal-Mart Stores, Inc.*, 2:14-cv-01987-JAD-CWH, 2016 WL 706191, *3 (D. Nev. Feb. 22, 2016), *citing Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F.Supp.2d 976, 998 (N.D. Cal. 2012). That is, a "[d]efendant must

have willfully destroyed the evidence with intent to harm." *Demena v. Smith's Food & Drug Centers, Inc.*, No. 2:12-cv-00626-MMD-CWH, 2012 WL 3962381, *2 (D. Nev. Sept. 10, 2012) (internal citation omitted).

The last and least severe sanction is to enter an adverse inference jury instruction that an offending party destroyed evidence. In other words, "[a]n adverse inference is an instruction to the trier of fact that evidence made unavailable by a party was unfavorable to that party." *Lewis v. Ryan*, 261 F.R.D. 513, 521 (S.D. Cal. 2009) (internal citation and quotation marks omitted). The Ninth Circuit provides that:

> a trial court . . . has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior. . . . [H]owever, a finding of 'bad faith' is not a prerequisite to this corrective procedure. . . . [S]imple notice of 'potential relevance to the litigation' [will suffice].

*Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (internal citations omitted). In accordance with the above, "an adverse inference instruction may be warranted where evidence destruction was [merely] willful or grossly negligent." *Brannan v. Bank of Am.*, No. 2:16-cv-01004-GMN-GWF, 2017 WL 4031442, *2 (D. Nev. Sept. 13, 2017) (internal citation omitted).

All told, when electronically stored information is spoliated, the Court may sanction the offending party under Rule 37(e).

> [This Rule] applies if electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery. . . . The common-law duty to preserve continues to apply even under Rule 37(e). . . . Rule 37(e) authorizes two tiers of sanctions for spoliation[. . . .] Under Rule 37(e)(1), upon a finding of prejudice to another party from loss of information, a court may employ measures no greater than necessary to cure the prejudice. . . . If a court finds that the spoliating party acted with the intent to deprive another party of the information's use in the litigation, Rule 37(e)(2) permits a court to impose harsh sanctions, including presuming that the lost information was unfavorable to that party, instructing the jury that it may or must presume the information was unfavorable to that party, dismissing the action, or entering a default judgment. . . . Rule 37(e) intentionally leaves to the court's discretion exactly what measures are necessary.

*Spencer*, 2017 WL 10518023 at *5–6 (internal alterations, citations, and quotation marks omitted).

*1.     Defendant Spoliated Video Footage Relevant to Plaintiff's Accident.*

As discussed in detail above, Defendant had a surveillance system that saved video footage for a seven-day look back period. Defendant, however, retained only seven seconds of video footage pertaining to Plaintiff's fall. Moreover, Defendant did not preserve the original, but rather a very grainy cell phone video of a computer screen including three or four steps before Plaintiff fell and one or two seconds showing Plaintiff's actual fall. ECF No. 41, Ex. 1. Based on these uncontested facts, Plaintiff seeks spoliation sanctions because Defendant failed to preserve surveillance video that may have captured any alleged inspections, maintenance, or cleaning of the area prior to Plaintiff's fall.

Defendant apparently did not have a specific policy regarding retaining video footage of accidents that occurred on its property, but it did have a policy requiring employees to complete an incident report and call a company insurer. And, here, there is no dispute that Defendant's insurer was called, seven seconds of video was captured, Plaintiff was taken by ambulance to the hospital, and that an incident report was completed. While the Court does not know if Defendant's insurer asked if video of the accident was available and that is why seven seconds of video was captured by Defendant, the totality of the information, which is uncontested, demonstrates that a reasonable party in Defendant's shoes would have reasonably foreseen litigation. *Hernandez v. Vanveen*, No. 2:14-cv-01493-JCM-CWH, 2016 WL 1248702, *2 (D. Nev. Mar. 28, 2016) (finding defendant had sufficient notice on the date of a traffic accident that litigation was reasonably foreseeable because Plaintiff was transported from the scene by ambulance and an accident report was generated), *Demena*, 2012 WL 3962381 at *2 ("While all slip and fall incidents may not result in litigation, the incident report made at the scene by Plaintiff and employees, combined with the fact that Plaintiff was transported out of the store on a gurney, with the assistance of emergency medical personnel, are sufficient to trigger Defendant's duty to preserve relevant evidence.").

Had Defendant retained video footage for some period of time before Plaintiff fell, that footage may well have shown whether Defendant was on notice that something had spilled or been dropped on the floor, whether it was one of Defendant's employees who dropped or spilled something and did or did not attempt to clean it up, or whether Defendant was put on actual notice

that something was on the floor by virtue of an inspection of the area prior to Plaintiff fall.[4] Video footage may also have helped determine whether Defendant did not know and had no reason to know there was anything on the floor that could or did cause Plaintiff's fall. However, in the absence of anything other than seven seconds of very grainy video showing Plaintiff taking two or three steps and then falling, Defendant, who was in sole control of the original video footage, failed to preserve documentation that was clearly relevant to issues in dispute denying Plaintiff access to this potentially crucial evidence.

While Plaintiff argues Defendant should have retained video for the 24-hour period preceding Plaintiff's accident, the Court does not agree this was necessary. The Court does find that Defendant's failure to take reasonable steps to preserve anything other than seven seconds of video was simply not reasonable. Further, there is no other documentation that helps illuminate whether Defendant or one of its employees caused something to be on the floor or whether Defendant was on actual or constructive notice of a hazardous condition prior to Plaintiff's fall.

Thus, the Court finds (1) there is no evidence that Defendant affirmatively erased or failed to preserve footage leading up to Plaintiff's fall with the intent to deprive Plaintiff of the use of this evidence (as required to issue spoliation sanctions under Rule 37(e)(2)), but (2) there is sufficient evidence to show Defendant was grossly negligent when it failed to preserve anything more than seven seconds of video. This negligence is a sufficient and proper basis upon which sanctions under Fed. R. Civ. P. 37(e)(1) are based. *Rios v. Dollar Gen. Mkt.*, No. 2:15-cv-2056-JAD-VCF, 2017 WL 3749495, at *3 (D. Nev. August 29, 2017) (citation omitted) (denying an adverse inference where Defendant kept only twenty minutes—as opposed to seven seconds—of video). For this reason, the Court exercises its discretion to impose the least severe sanction applicable to spoliation of electronic evidence; that is, "an instruction to the trier of fact that evidence made unavailable by a party was unfavorable to that party." *Lewis*, 261 F.R.D. at 521 (internal citation and quotation marks omitted).

---

[4] Defendant's Executive Chef, Hector Sanchez, testified that while there is no one specific tasked with monitoring the restaurant floor, "[i]t is a team effort to make sure the floors are clean and dry." ECF No. 41-10 (Hector Sanchez's Deposition Transcript) at 33.

### 2. Defendant Did Not Spoliate Video of Plaintiff's Actual Fall or Time After the Fall.

Plaintiff claims she has been "highly prejudiced" based on the seven seconds of video that does exist because the video "is an unclear recording of a recording." ECF No. 41 at 6. While Plaintiff accurately characterizes the existing surveillance footage as unclear, Defendant met, albeit barely, its duty to preserve the footage of the actual fall. Plaintiff's unhappiness with the recording procedure aside, Defendant cannot be said to have spoliated this evidence, which it timely produced on January 2, 2019. Accordingly, spoliation sanctions are not warranted on this basis.

Plaintiff also argues that Defendant should have kept video footage of where Plaintiff fell for some period of time after the fall because this could have revealed whether Defendant inspected the area after the accident. *Id*. The Court does not agree. As explained by the Nevada Supreme Court:

> The owner or occupant of property is not an insurer of the safety of a person on the premises, and in the absence of negligence, no liability lies. . . . An accident occurring on the premises does not of itself establish negligence. . . . Yet, a business owes its patrons a duty to keep the premises in a reasonably safe condition for use. . . . Where a foreign substance on the floor causes a patron to slip and fall, and the business owner or one of its agents caused the substance to be on the floor, liability will lie, as a foreign substance on the floor is usually not consistent with the standard of ordinary care. . . . Where the foreign substance is the result of the actions of persons other than the business or its employees, liability will lie only if the business had actual or constructive notice of the condition and failed to remedy it.

*Sprague v. Lucky Stores*, *Inc.*, 849 P.2d 320, 322–23 (Nev. 1990) (internal citations omitted). Applicable here, video subsequent to Plaintiff's fall would not show whether an employee of Defendant caused something to be on the floor or that Defendant knew something was on the floor and ignored the problem. Video subsequent to the fall would not show if someone other than Defendant or its employees was the cause of what, if anything, was on the floor when Plaintiff fell. Moreover, whether Defendant inspected the area after Plaintiff's fall also does not make it more or less probable that Defendant was on actual or constructive notice that it had any information prior to the fall. Indeed, it appears that whether Defendant had constructive knowledge of a hazardous condition should be left to the jury to decide. *Sprague*, 849 P.2d at 323 (internal citation omitted).

b. The Legal Standard for Non-Spoliation Sanctions.

Sanctions may be imposed under Fed. R. Civ. P. 37(b)(2)(C) if a party "fails to obey an order to provide or permit discovery." *Leon*, 464 F.3d at 958 (internal citations and quotation marks omitted). "Failure to produce documents as ordered . . . is considered sufficient prejudice." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990) (internal citation omitted). "Belated compliance with discovery orders does not preclude the imposition of sanctions[, because l]ast-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts." *North Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986) (internal citation omitted).

   *1.  Defendant failed to respond to Plaintiff's Interrogatories Nos. 12 and 13.*

On June 7, 2019, the Court stated: "The Court overrules the objections to the request for production and objections to interrogatories, as they have been served two (2) or three (3) months after the last extension was granted. Good cause has not been shown why the responses were not timely served or why objections should be allowed." ECF No. 19. On August 26, 2019, the Court confirmed that all objections to Plaintiff's RFPs and Interrogatories were overruled and waived. ECF No. 33.

Defendant does or at least should know that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Bonanza Beverage Co. v. MillerCoors, LLC*, No. 2:18-cv-01445-JAD-GWF, 2019 WL 302491, *3 (D. Nev. Jan. 23, 2019) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 26(b)(1). Nonetheless, despite the clear June 2019 Order, reiterated on August 26, 2019, Defendant never responded to Plaintiff's Interrogatories Nos. 12 and 13, and is in violation of the Court's Orders. Therefore, even if the information Plaintiff sought through Interrogatories Nos. 12 and 13 is ultimately deemed inadmissible by the Court, this evidence was discoverable once the Court ordered all objections overruled.[5]

---

[5] The Court does not agree that the Supplemental Responses to Plaintiff's RFPs are "vague," as Plaintiff alleges. Defendant supplemented these responses with General Liability Forms it submitted to its insurer NetClaim regarding two previous guest injuries on its premises. ECF No. 41-5 at 14–17. The Court finds these documents were appropriate supplemental responses given the evidence Plaintiff requested in RFP Nos. 9, 10, 11, 26, 27, and 28.

11

The appropriate sanction for Defendant's violation of the Court's Order is found in Fed. R. Civ. P. 37(b)(2)(C). Defendant shall be required to pay Plaintiff's reasonable attorneys' fees and costs incurred for bringing her Motion to Strike as it pertains to Interrogatories No. 12 and 13. Defendant shall also be required to supplement its answers to Plaintiff's Interrogatories No. 12 and 13 within seven days of the issuance of this Order.

### 2. *Defendant delayed disclosures of Lupiba's incident report and Steam X's contact information.*

Lupiba unequivocally testified that she completed an incident report of Plaintiff's accident and placed the report in a binder in the office on the day of the event in December 2016. Defendant, however, denied possession of any incident reports on May 15, and again on June 3, 2019. Defendant claimed to know nothing about the report until Lupiba testified at deposition in September 2019. Defendant makes this assertion despite Hector Sanchez's August testimony stating that completing incident reports of all accidents is Defendant's standard policy. Moreover, Judge Foley's June 7, 2019 Order required Defendant to answer Plaintiff's discovery requests as all of Defendant's objections were waived because they were untimely. ECF No. 19. A reasonable and diligent search for responsive information following Judge Foley's June 2019 Order would have revealed the existence of this evidence before the Court's August 26, 2019 Order and before Lupiba's September 18th testimony. Notwithstanding, Defendant finally produced Lupiba's incident report on September 19, 2019, the day after Lupiba testified.

Contrary to Defendant's assertions, its belated production of Lupiba's incident report was prejudicial, in and of itself. *North Am. Watch Corp.*, 786 F.2d at 1451. Plaintiff had deposed the relevant witnesses in this matter by the time the report was produced, and therefore, was precluded from conducting additional discovery on this relevant document.

In addition, it is undisputed that Defendant failed to provide Steam X's contact information for nearly three months after it promised to do so. Defendant argues that Steam X's contact information, and by extension, Steam X's cleaning services, are irrelevant to Plaintiff's claims. ECF No. 43 at 4. The Court finds this argument unpersuasive. Information regarding who Defendant used to maintain the area where Plaintiff slipped and fell may be probative of Defendant's liability.

Defendant's extraordinarily belated disclosure, in light of the clear availability of responsive information, amounts to sanctionable conduct.

The Court exercises its inherent authority to sanction Defendant by reopening discovery for a period through March 11, 2020 for the express limited purpose of permitting Plaintiff the opportunity to depose (1) Steam X, (2) Lupiba about the content or lack thereof of the incident report, and (3) Defendant's person most knowledgeable regarding (i) the production, maintenance, and storage of incident reports generally and specifically as they pertain to this case, and (ii) the manner and extent of Steam X's cleaning services provided for Defendant. Court reporting fees and costs of depositions and deposition transcripts requested by Plaintiff, if any, are to be paid by Defendant.

### III. ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion to Strike (ECF No. 41) is GRANTED in part, and DENIED in part. Plaintiff's Motion is GRANTED as follows:

1. In accordance with Rule 37(e)(1), Plaintiff shall be entitled to an adverse inference instruction to the trier of fact at the time of trial as the result of Plaintiff's spoliation discussed herein. The instruction shall state that video footage for the period of time before Plaintiff's fall, made unavailable by Defendant, was unfavorable to Defendant.

2. In accordance with Rule 37(b)(2), Defendant is required to pay Plaintiff's reasonable attorneys' fees and costs incurred for bringing her Motion to Strike as it pertains to Interrogatories No. 12 and 13. Defendant is also required to supplement its answers to Plaintiff's Interrogatories No. 12 and 13 within seven (7) days of the issuance of this Order.

3. Also in accordance with Rule 37(b)(2), discovery is reopened for the 30-day period measured from the date of this Order for the sole and express limited purpose of allowing Plaintiff to depose (1) Steam X, (2) Lupiba about the content or lack thereof of the incident report, and (3) Defendant's person most knowledgeable regarding (i) the production, maintenance, and storage of incident reports generally and specifically as they pertain to this case, and (ii) the manner and extent of Steam X's cleaning services provided for Defendant. Court reporting fees and costs of depositions and deposition transcripts requested by Plaintiff, if any, are to be paid by Defendant.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike (ECF No. 41) is DENIED except as expressly stated above.

IT IS FURTHER ORDERED that no later than fourteen (14) days from the date of the Order, Plaintiff shall file and serve a memorandum, supported by affidavit of counsel, establishing the amount of attorneys' fees and costs awarded pursuant to this Order.

DATED this 11th day of February, 2020.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE